**UNITED STATES DISTRICT COURT**

**EASTERN DISTRICT OF CALIFORNIA**

| | |
|---|---|
| NATIONSTAR MORTGAGE LLC<br><br>    Plaintiff,<br><br>    v.<br><br>ROBERT PRESLEY, et al.<br><br>    Defendants. | Case No.: 1:20-cv-00620-JLT-BAK<br><br>ORDER GRANTING DEFENDANT'S MOTION TO DISMISS FIRST AMENDED COMPLAINT<br><br>(Doc. 43) |

Nationstar Mortgage LLC brings a series of claims against Robert Presley, Healing My People Services, Joyce Decormier, Joe McHaney, Nikola Gulan, and Does 1–10, alleging a wide-ranging scheme to conduct sham arbitration proceedings that result in purported awards to mortgage borrowers against Nationstar and other lenders and servicers. (Doc. 42 at 1–3.) McHaney has moved to dismiss under Federal Rule of Civil Procedure 12(b)(6). (Doc. 43.) Nationstar opposes the Motion to Dismiss and has requested leave to amend in the event the Court grants the Motion.

The Court finds the matter is suitable for decision without oral argument. *See* Local Rule 230(g). For the reasons set forth below, McHaney's Motion to Dismiss is **GRANTED**, and Nationstar's request for leave to amend is **DENIED**.

**I.    Background and Procedural History**

Nationstar Mortgage LLC filed this action on April 30, 2020, alleging violations of the civil Racketeer Influenced Corrupt Organizations Act, 18 U.S.C. §§ 1961 *et seq.* ("RICO"), a violation of

1

California Business & Professions Code § 17200, and tortious interference with contractual relations against Robert Presley, Healing My People Services, Joyce Decormier, Joe McHaney, Nikola Gulan, and Doe Defendants 1–10.  (Doc. 1.)  The Clerk of Court recorded an Entry of Default as to Presley, Gulan, and Healing My People Services on November 11, 2020 (Docs. 32, 33, 34), and as to Decormier on September 24, 2021 (Doc. 46), leaving McHaney as the only non-Doe defendant not in default.  The Court dismissed Nationstar's Complaint for failing to state a claim on July 27, 2021, while providing leave to amend.  (Doc. 41.)

  Nationstar filed a First Amended Complaint against the same defendants on August 24, 2021.  (Doc. 42.)  In the FAC, Nationstar alleges a violation of RICO §§ 1962(c) and 1964(c) by Decormier, McHaney, Gulan, and the Doe Defendants; a violation of RICO §§ 1962(d) and 1964(c) by Presley, McHaney, Decormier, Gulan, and the Doe Defendants; a violation of California Business & Professions Code § 17200 by Decormier, McHaney, Gulan, and the Doe Defendants; and tortious interference with contractual relations by McHaney, Decormier, Gulan, and the Doe Defendants.  (*Id.* at 7–12.)  Nationstar seeks recovery of actual damages, punitive damages, treble damages, restitution, attorney's fees, and costs, as well as injunctive relief and imposition of a receivership over Defendants' enterprise.  (*Id.* at 13–14.)

## II. Motion to Dismiss

### A.  Summary of Allegations

  Nationstar makes the following allegations in its FAC:  Presley and the Doe Defendants operate Healing My People Services ("HMP"), a "sham arbitration service that preys upon unsuspecting debtors, issuing absurd sums to the debtors that are not enforceable in court in exchange for a fee."  (Doc. 42 at 1.)  HMP contacts distressed mortgage borrowers, "claiming to help consumers arbitrate disputes, by scheduling sham arbitration proceedings, charging a fee from financially distressed consumers, and issuing biased judgments that are nonbinding and not based on established law."  (*Id.* at 4.)  HMP and Presley "mislead and fraudulently misrepresent to borrower[s] that [HMP and Presley] will conduct an arbitration proceeding" in which "'[t]he arbitrator may grant any remedy, relief, or outcome that the parties could have received in court, including awards of attorney's fees and costs . . .'"  (*Id.* at 6.)  In reality, any resulting arbitration award "is nonbinding and has no authority in

the courts," and "[s]ervicer/lender and borrower are monetarily defrauded by [HMP and Presley], and the employees/agents are paid compensation for their services in assisting with such fraud." (*Id.*) Once borrowers have paid for these services, Presley sometimes recruits them for employment by HMP "in a 'multi-level marketing' type scheme," such as by acting as a notary in HMP's sham arbitrations. (*See id.* at 4–5.) HMP and Presley's scheme was ongoing as of the filing of the FAC with outreach efforts targeting consumers in numerous states. (*Id.* at 6.)

Under the scheme, HMP and Presley issued an arbitration award to Decormier of $2,760,000 regarding an $890,000 mortgage, an award of $9,385,041.87 to McHaney, an award of $1,200,000 to Gulan, and award of $2,923,972 to non-party Sybil Joy Ehninger High. (*Id.* at 1–2.) In each case, the mortgagee did not consent to arbitration. (*Id.*) Nationstar attached these purported awards to the FAC with indicia that they were filed with various courts and provided to Nationstar and other lenders or servicers by mail. (*Id.* at 15–171.)

HMP and Presley then employed McHaney, Decormier, Gulan, and High as "employees and/or agents" of HMP "to help facilitate the sham arbitration service. . ." (*Id.* at 5, 3.) Each Defendant "intended to (and did) benefit themselves at Plaintiff's (and borrowers') expense." (*Id.* at 6.) Each Defendant used "wire, internet, and radio communication in interstate and foreign commerce" and "willfully caused [certain] items to be placed in an authorized mail depository for mail matter to be [sent] and delivered by the United States Postal Service." (*Id.* at 7.)

**B. Legal Standard**

A Rule 12(b)(6) motion "tests the legal sufficiency of a claim." *Navarro v. Block*, 250 F.3d 729, 732 (9th Cir. 2001). "Dismissal can be based on the lack of a cognizable legal theory or the absence of sufficient facts alleged under a cognizable legal theory." *Balistreri v. Pacifica Police Dep't*, 901 F.2d 696, 699 (9th Cir. 1990). A claim for relief must contain a "short and plan statement of the claim showing that the pleader is entitled to relief." Fed. R. Civ. Proc. 8(a)(2). Though Rule 8(a) does not require detailed factual allegations, a plaintiff must allege "enough facts to state a claim for relief that is plausible on its face." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007); *Ashcroft v. Iqbal*, 556 U.S. 662, 677–78 (2009). "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for

the misconduct alleged." *Iqbal*, 556 U.S. at 678.

In analyzing whether a complaint states a claim on which relief may be granted, courts accept as true the allegations in the complaint and construe them in the light most favorable to the plaintiff. *Hishon v. King & Spalding*, 467 U.S. 69, 73 (1984); *Love v. United States*, 915 F.2d 1242, 1245 (9th Cir. 1989). Courts may not assume that a plaintiff "can prove facts which it has not alleged or that the defendants have violated the . . . laws in ways that have not been alleged." *Assoc. Gen. Contractors of Cal., Inc. v. Cal. State Council of Carpenters*, 459 U.S. 519, 526 (1983). A court's review of a Rule 12(b)(6) motion "is limited to the complaint alone." *Cervantes v. City of San Diego*, 5 F.3d 1273, 1274 (9th Cir. 1993). Therefore, "a court may not look beyond the complaint to a plaintiff's moving papers, such as a memorandum in opposition to a defendant's motion to dismiss." *Schneider v. Cal. Dep't of Corrections*, 151 F.3d 1194, 1197 n.1 (9th Cir. 1998).

**C. Analysis**

Because McHaney is the only non-Doe Defendant who has not defaulted in this action, and because he has brought his Motion to Dismiss solely on his own behalf, the Court will limit its analysis to Nationstar's claims against McHaney.

   a. <u>Count 1 – RICO Claim Under 18 U.S.C. §§ 1962(c) and 1964(c)</u>

18 U.S.C. § 1964(c) states that "[a]ny person injured in his business or property by reason of a violation of [18 U.S.C. § 1962]" may bring a private cause of action. "Subsections 1962(a) through (c) prohibit certain 'pattern[s] of racketeering activity' in relation to an 'enterprise.' Subsection 1964(d) makes it illegal to conspire to violate subsections (a), (b), and (c) of section 1962." *United Brotherhood of Carpenters & Joiners of Am. v. Bldg. and Constr. Trades Dep't, AFL-CIO*, 770 F.3d 834, 837 (9th Cir. 2014) (alterations in original). Nationstar bases its RICO claim on sections 1962(c) and 1964(c). (Doc. 42 at 7–9.)

Civil RICO claims under section 1962 consist of five elements: "(1) conduct (2) of an enterprise (3) through a pattern (4) of racketeering activity (known as 'predicate acts') (5) causing injury to plaintiff's business or property." *United Brotherhood of Carpenters & Joiners*, 770 F.3d at 837. "[A]ny act which is indictable under . . . [18 U.S.C.] section 1341 (relating to mail fraud), [or] section 1343 (relating to wire fraud)" is a "racketeering activity" that may constitute a predicate act.

18 U.S.C. § 1961(1). "The mail and wire fraud statutes are identical except for the particular method used to disseminate the fraud and contain three elements: (A) the formation of a scheme to defraud, (B) the use of the mails or wires in furtherance of that scheme, and (C) the specific intent to defraud." *Eclectic Properties E., LLC v. Marcus & Millichap Co.*, 751 F.3d 990, 997 (9th Cir. 2014).

Mail and wire fraud are subject to the heightened pleading requirements of Federal Rule of Civil Procedure 9(b), which requires that a complaint state "the circumstances constituting fraud . . . with particularity." *Schreiber Distrib. Co. v. Serv-Well Furniture Co.*, 806 F.2d 1393, 1400 (9th Cir. 1986). "[T]he pleader must state the time, place, and specific content of the false representations as well as the identities of the parties to the misrepresentation." *Id.* at 1401.

For a complaint to demonstrate a "pattern" of racketeering activity, "there must have been 'at least two [predicate] acts of racketeering activity' within two years of each other." *Richards v. Cnty. Of Los Angeles*, 2017 WL 7411159, at *5 (C.D. Cal. Mar. 31, 2017) (quoting 18 U.S.C. § 1961(5)). When a plaintiff alleges RICO claims against multiple defendants, the plaintiff "must allege at least two predicate acts by *each* defendant." *In re Wellpoint, Inc. Out-of-Network UCR Rates Litig.*, 903 F. Supp. 2d 880, 914 (C.D. Cal. 2012) (citation and quotation omitted).

The RICO claim against McHaney is fatally deficient because it fails to adequately allege any pattern of racketeering activity by McHaney. The FAC generally describes an ongoing pattern of mail and wire fraud committed by members of the alleged conspiracy. However, these references are only conclusory as to McHaney: they fail to describe the specific role, if any, that McHaney played in carrying out each predicate act, and they omit any statement of the time, place, and specific content of false representations that McHaney made. *See Schreiber Distrib. Co.*, 806 F.2d at 1400. Similarly, the FAC does not provide examples demonstrating that McHaney engaged in at least two predicate acts of racketeering activity.[1] *See* 18 U.S.C. § 1961(5). Because Nationstar has failed to adequately demonstrate that McHaney engaged in a pattern of racketeering activity, the Court grants McHaney's Motion to Dismiss as to Count 1.

---

[1] The FAC, at Exhibit B, identifies one example of a purportedly fraudulent arbitration award related to McHaney's mortgage. (*See* Doc. 42 at 54–92.) However, the Exhibit lacks any indicia that McHaney used mails or wires to transmit fraudulent materials, as the attached proof of service states that McHaney served the arbitration award on interested parties "[b]y personal service." (*Id.* at 56.)

5

b.  Count 2 – RICO Conspiracy Claim Under 18 U.S.C. § 1962(d)

McHaney also moves to dismiss the RICO conspiracy claim, arguing generally that "seeking a remedy for contractual damages in court or through arbitration is not racketeering or conspiracy by statute." (Doc. 43 at 9.)  To state a claim for conspiracy to violate RICO under 18 U.S.C. § 1962(d), a plaintiff must allege "either an agreement that is a substantive violation of RICO or that the defendants agreed to commit, or participated in, a violation of two predicate offenses." *Howard v. Am. Online, Inc.*, 208 F.3d 741, 751 (9th Cir. 2000).  "The illegal agreement need not be express so long as its existence can be inferred from the words, actions or interdependence of activities and persons involved." *Oki Semiconductor Co. v. Wells Fargo Bank*, 298 F.3d 768, 775 (9th Cir. 2002).  Under section 1962(d), although a conspiracy defendant need not have personally committed a predicate act, or even an overt act in furtherance of the RICO conspiracy, the defendant must be "aware of the essential nature and scope of the enterprise" and must have "intended to participate in it." *Baumer v. Pachl*, 8 F.3d 1341, 1346 (9th Cir. 1993).  The RICO claim against McHaney fails for the same reason the underlying RICO claim against him fails:  the FAC does not specifically connect McHaney to any action other than the filing of the arbitration award related to his own mortgage.  The FAC alleges that McHaney was "employed" by other Defendants "to help facilitate the sham arbitration service that preys upon unsuspecting debtors, issuing absurd sums to the debtors that are not enforceable in court in exchange for a fee," (Doc. 42, ¶ 2), but that allegation contains no *facts* that describe McHaney's conduct outside of the context of the arbitration award related to his own mortgage, let alone facts that suggest he was aware of any other potential predicate acts or the scope of the scheme as a whole.  It is similarly insufficient that the FAC alleges the existence of a "multi-level marketing" scheme and that certain of the defaulted Defendants "encouraged employees" to recruit others into that scheme, (*id*., ¶ 16), because the FAC fails to plausibly allege that McHaney had any knowledge or understanding of any part of the scheme beyond the filings concerning his own arbitration award. *See De Los Angeles Gomez v. Bank of Am., N.A.*, 642 F. App'x 670, 676 (9th Cir. 2016) (although complaint pleaded that bank employee defendants were part of an enterprise and had general knowledge of its purpose, no allegations plausibly suggested the bank defendants had knowledge of the alleged Ponzi scheme or its scope, or that they agreed and intended to participate in it).  The Court grants McHaney's Motion to

Dismiss as to Count 2.

### c. Count 3– California Unfair Competition Law

The third cause of action alleges that McHaney violated California's Unfair Competition Law, which prohibits "unfair competition," defined to include "any unlawful, unfair or fraudulent business act or practice. . ." Cal. Bus & Prof. Code § 17200.  Courts have interpreted the statute to include a private right of action in some circumstances based on unfair or fraudulent conduct.  *See, e.g.*, *Zhang v. Superior Ct.*, 57 Cal. 4th 364, 383 (2013).  McHaney moves to dismiss this claim.  (Doc. 43 at 10.) Among other things, McHaney argues that the conduct alleged in the complaint is "not actionable" under California law.  (*Id*.)  To have standing to bring a claim under the Unfair Competition Law, a plaintiff must "(1) establish a loss or deprivation of money or property to qualify as an injury in fact, i.e., economic injury, and (2) show that the economic injury was the result of, i.e., caused by, the unfair business practice.  *Kwikset Corp. v. Superior Ct*., 310 Cal. 4th 323 (2011) (emphasis in original).  As one district court concisely summarized:

> The requirement that injury be economic renders standing under the UCL "substantially narrower than federal standing . . . which may be predicated on a broader range of injuries."  [*Kwikset Corp.*, 310 Cal. 4th] at 324.  Economic injury may result from unfair competition if a plaintiff:  (1) surrenders in a transaction more, or acquires in a transaction less, than he or she otherwise would have; (2) has a present or future property interest diminished; (3) is deprived of money or property to which he or she has a cognizable claim; or (4) is required to enter into a transaction, costing money or property, that would otherwise have been unnecessary.  *Id*. at 323.

*Donohue v. Apple, Inc*., 871 F. Supp. 2d 913, 919 (N.D. Cal. 2012) (parallel citations and footnotes omitted).  Nothing in the FAC indicates how Plaintiff has suffered a qualifying economic injury.  The FAC instead speaks in hypotheticals by alleging that "[u]nless these sham arbitration awards are cancelled, invalidated, ab initio as of the date they were filed and/or registered, they *may* cause serious injury to Plaintiff."  (Doc. 42, ¶ 57.)  For this reason, the third cause of action must be dismissed for lack of standing.

### d. Count 4: Tortious Interference with Contract

The fourth cause of action alleges that McHaney tortiously interfered with Nationstar's contractual relations with borrowers.  To state a claim for tortious interference with a contract under

California law, a plaintiff must show: "(1) a valid contract between plaintiff and a third party; (2) defendant's knowledge of the contract; (3) defendant's intentional acts designed to induce breach or disruption of the contract; (4) actual breach or disruption; and (5) resulting damage." *Family Home and Fin. Ctr., Inc. v. Fed. Home Loan Mortg. Corp.*, 525 F.3d 822, 825 (9th Cir. 2008) (citing *Pac. Gas & Elec. Co. v. Bear Stearns & Co.*, 50 Cal. 3d 1118 (1990)).

Nationstar's FAC states that "[v]alid contracts existed and exist between borrowers of Plaintiff in the form of valid Deeds of Trust. At all material times . . . MCHANEY . . . [was] and [is] aware that Plaintiff had and has contractual relationships with these borrowers." (Doc. 42 at 11–12.) Further, McHaney "intentionally solicited, assisted with and/or conducted fraudulent arbitration proceedings in an effort to encourage borrowers to contest their mortgage agreements without just cause." (*Id.* at 12.) McHaney "intended to harm Plaintiff financially and to induce borrowers to sever their relationship with Plaintiff," which "has provided . . . MCHANEY . . . with an unfair business advantage and constitutes an unfair business practice in violation of California Business & Professional Code § 17200." (*Id.*) McHaney "will continue to interfere with Plaintiff's contractual relations and unless . . . MCHANEY . . . [is] restrained by appropriate injunctive relief, Plaintiff will continue to suffer immediate, irreparable, and incalculable loss of revenue and harm to their business reputation, goodwill, and to the integrity of their operations, for which there is no adequate remedy at law." (*Id.*) "As a proximate result of the wrongful acts of . . . MCHANEY . . . Plaintiff has sustained and will continue to sustain damages. The precise nature and amount of such accrued and continuing damage is not known by Plaintiff and cannot be ascertained by it at the present time, but such damages are on information and belief substantial and susceptible to being proven at trial." (*Id.*)

Nationstar has not properly pleaded its tortious interference claim. The FAC states only that the arbitration proceedings were "intended to . . . induce borrowers to sever their relationship with Plaintiff. . ." (Doc. 42 at 12.) Nowhere in the FAC does Nationstar allege that actual breach or disruption of any contract between Nationstar and a third party occurred. While the arbitration of a dispute between Nationstar and a third party could indicate breach or disruption, Nationstar has pointed to no example of this occurring: its only discussion of a specific contract involving a non-party relates to an arbitration award to High, but the exhibits describing this arbitration seem to

indicate that High's mortgage contract involved lenders or servicers other than Nationstar. (*See generally* Doc. 42 at Exhibits D and E.) Because the element of actual breach or disruption is absent, the Court grants McHaney's Motion to Dismiss as to Count 4.

### III.     Leave to Amend

In its opposition, Nationstar requests leave to amend its complaint under Federal Rule of Civil Procedure 15 if the Court grants the Motion to Dismiss. (Doc. 48 at 9.) Leave to amend is proper and should freely be given "when justice so requires." Fed. R. Civ. Proc. 15(a)(2). In considering this standard, a court "should be guided by consideration of whether the amendment would prejudice the opposing party, whether it is sought in bad faith, whether the proposed amendment would be futile, and whether the amendment would cause undue delay." *Kuschner v. Nationwide Credit*, 256 F.R.D. 684, 687 (E.D. Cal. 2009) (citing *Loehr v. Ventura Cty. Comm. College Dist.*, 743 F.2d 1310, 1319 (9th Cir. 1984)). Leave to amend should not be granted when an amendment would be futile. *See Miller v. Rykoff-Sexton, Inc.*, 845 F.2d 209, 214 (9th Cir. 1988), *overruled on other grounds by Iqbal*, 556 U.S. 662. "[A] proposed amendment is futile only if no set of facts can be proved under the amendment to the pleadings that would constitute a valid and sufficient claim or defense." *Id.*

Nationstar, in requesting leave to amend, states that it "has a number of additional supportive facts and allegations it can add in the Complaint regarding its lack of consent and the RICO allegations[2]." (Doc. 48 at 9.) Notably, the Court has once already dismissed a complaint in this action for failing to state a claim. (Doc. 41.) Nationstar has had two opportunities to present sufficient facts to state its claims, yet it has failed to do so. Ordinarily, the Court would not allow another opportunity to plead. However, based upon the representation of counsel, the Court will give Nationstar the benefit of the doubt and will presume the pleading failures outlined here are those of counsel rather than an inability to plead this case. Thus, the Court will provide a final opportunity to state a claim. Nationstar is cautioned, however, that it must research the elements for which factual allegations are required and must meet the pleading standards.

///

---

[2] The Court is at a loss to understand why Nationstar has not included these allegations before now. To be perfectly clear, this Nationstar's last opportunity to plead the claims.

9

## IV. Conclusion and Order

For the reasons set forth above, the Court **ORDERS**:

1. Defendant's motion to dismiss all claims against him is **GRANTED**.
2. Plaintiff's request for leave to amend the first amended complaint is **GRANTED**. Plaintiff may file its second amended complaint **within 21 days**. Failure to do so will result in the Court dismissing the action against defendant McHaney.

IT IS SO ORDERED.

Dated:   **May 16, 2022**

UNITED STATES DISTRICT JUDGE