1

2

3

4

5

6

7

8                    UNITED STATES DISTRICT COURT

9                    EASTERN DISTRICT OF CALIFORNIA

10

11    NATIONSTAR MORTGAGE LLC,              Case No. 1:20-cv-00620-JLT-CDB

12                 Plaintiff,               FINDINGS AND RECOMMENDATIONS
                                            DENYING PLAINTIFF'S MOTION FOR
13          v.                              DEFAULT JUDGMENT, DECLINING TO
                                            EXERCISE SUPPLEMENTAL
14    ROBERT PRESLEY, *et al*.              JURISDICTION, AND DISMISSING
                                            PLAINTIFF'S FIRST AMENDED
15                 Defendants.              COMPLAINT WITH PREJUDICE

16                                          14-DAY OBJECTION PERIOD

17                                          (Doc. 68)

18

19          Pending before the Court is Plaintiff Nationstar Mortgage LLC's ("Plaintiff") motion for

20    default judgment against Defendants Robert Presley, Healing My People Services ("HMP"),

21    Joyce Decormier, and Nikola Gulan.  (Doc. 68).[1]  In support of its motion, Plaintiff filed

22    supporting declarations of Valerie J. Schratz, an attorney representing Plaintiff in this action

23    (Doc. 70), and Alan Blunt, an employee of Plaintiff's who attests to personal knowledge

24    regarding Plaintiff's "systems of record" and certain relevant facts of this case (Doc. 72).  Also, in

25    support of its motion, Plaintiff filed a request for judicial notice (Doc. 75) that attaches eight

26    documents consisting of filings and orders entered in other court actions involving some of the

27

28          [1] The matter is referred to the undersigned pursuant to 28 U.S.C. § 636(b)(1)(B) & (C) and
      Local Rule 304 (E.D. Cal. 2022).

1   same defendants.   Thereafter, Defendant Joyce Decormier ("Decormier") filed an opposition to

2   Plaintiff's motion (Doc. 77), and Plaintiff replied (Doc. 78).  The undersigned has reviewed and

3   considered all the parties' filings and supporting documents.  For the reasons set forth herein, the

4   Court will recommend that Plaintiff's motion for default judgment be DENIED and that the case

5   be DISMISSED without leave to amend.

6                                   PROCEDURAL BACKGROUND

7          Plaintiff filed this action on April 30, 2020, for permanent injunction against Robert

8   Presley, HMP, Joyce Decormier, Joe McHaney, Nikola Gulan, and Doe Defendants 1–10.  (Doc.

9   1).  Plaintiff brought the following causes of action against Defendants: violations of the

10  Racketeer Influenced and Corrupt Organizations Act ("RICO") (§§ 1962(c), 1962(d), and

11  1964(c)), a violation of California's Business & Professions Code § 17200, and tortious

12  interference with contractual relations.  *Id.*

13         On July 14, 2020, Plaintiff filed proof of service as to Decormier and Gulan. (Docs. 8-9).

14  Decormier filed a motion to dismiss on July 20, 2020 (Doc. 16), and McHaney filed a motion to

15  dismiss on July 27, 2020 (Doc. 16).  Plaintiff filed oppositions to Decormier and Mchaney's

16  motions to dismiss and a request for judicial notice in support of its oppositions.  (Docs. 20-22).

17  On October 1, 2020, Plaintiff filed proof of service as to Presley and HMP.  (Docs. 26-27).  On

18  October 2, 2020, Presley filed objections to Plaintiff's proof of service.  (Doc. 28).  Plaintiff filed

19  requests for entry of default as to Presley, HMP, and Gulan on November 6, 2020 (Docs. 29-31),

20  and the Clerk of Court recorded entries of default against Presley, HMP, and Gulan for failing to

21  appear, plead or answer Plaintiff's complaint within the time allowed by law on November 9,

22  2020 (Docs. 32-34).

23         On July 27, 2021, the Honorable District Judge Dale A. Drozd granted Decormier's and

24  McHaney's motions to dismiss.  (ECF No. 41).  District Judge Drozd found Plaintiff failed to

25  state a cognizable §§ 1962(c) and/or 1962(d) RICO claim, a tortious interference with contractual

26  relations claim, and a claim under California's unfair competition law.  *Id*. at 4-8.  District Judge

27  Drozd provided Plaintiff an opportunity to file an amended complaint.  *Id*. at 8.

28         Plaintiff filed a First Amended Complaint ("FAC") against the same Defendants on

1    August 24, 2021.  (Doc. 42).  In the FAC, Plaintiff alleges violations of RICO §§ 1962(c) and

2    1964(c) by Decormier, McHaney, Gulan, and the Doe Defendants; a violation of RICO §§

3    1962(d) and 1964(c) by Presley, McHaney, Decormier, Gulan, and the Doe Defendants; a

4    violation of California Business & Professions Code § 17200 by Decormier, McHaney, Gulan,

5    and the Doe Defendants; and tortious interference with contractual relations by McHaney,

6    Decormier, Gulan, and the Doe Defendants.  *Id*. at 7–12.  Plaintiff seeks recovery of actual

7    damages, punitive damages, treble damages, restitution, attorney's fees, and costs, as well as

8    injunctive relief and imposition of a receivership over Defendants' enterprise.  *Id*. at 13–14.

9          On September 20, 2021, McHaney filed a motion to dismiss Plaintiff's FAC.  (Doc. 43).

10   Plaintiff filed a request for entry of default as to Decormier on September 24, 2021 (Doc. 45), and

11   that same day, the Clerk of Court recorded an entry of default against Decormier for failing to

12   appear, plead or answer Plaintiff's FAC within the time allowed by law (Doc. 46).  On October

13   11, 2021, Plaintiff filed an opposition to McHaney's motion to dismiss, and in the alternative a

14   request for leave to amend the FAC and a request for judicial notice in support of its opposition.

15   (Docs. 48-49).  McHaney filed a reply to Plaintiff's opposition and a response to Plaintiff's

16   request for judicial notice (Docs. 50-51).

17         On May 16, 2022, the Honorable District Judge Jennifer L. Thurston issued an order

18   granting McHaney's motion to dismiss.  (Doc. 58).  District Judge Thurston found that none of

19   Plaintiff's four causes of action properly stated claims against McHaney.  *Id*.  The Court

20   reluctantly granted Plaintiff's request for leave to amend the complaint, largely because Plaintiff

21   represented to the Court that it "has a number of additional supportive facts and allegations it can

22   add in the Complaint regarding the lack of consent and the RICO allegations."  *Id*. at 9.  The

23   Court concluded: "The Court is at a loss to understand why Nationstar has not included these

24   allegations before now. To be perfectly clear, this [is] Nationstar's last opportunity to plead the

25   claims."  *Id*. at p. 9 n.2.

26         Approximately three weeks after the Court granted Plaintiff leave to amend, instead of

27   amending its complaint, Plaintiff noticed its intent to dismiss McHaney (Doc. 61).  On November

28   10, 2022, Plaintiff filed the instant motion for default judgment against the remaining Defendants.

3

(Doc. 68).  That same day and November 14, 2022, Plaintiff filed supplemental material in support of its motion for default judgment.  (Docs. 70, 72, 75-76).  Decormier filed an opposition/motion to dismiss on November 21, 2022 (Doc. 77), and Plaintiff filed a reply on November 30, 2022 (Doc. 78).

<u>GOVERNING LAW UNDER RULE 55</u>

Under Rule 55 of the Federal Rules of Civil Procedure, default judgment is a two-step process. *See Eitel v. McCool*, 782 F.2d 1470, 1471 (9th Cir. 1986). Prior to entry of default judgment, there must be an entry of default.  *See* Fed. R. Civ. P. 55.  Upon entry of default, the factual allegations of the complaint, save for those concerning damages, are deemed to have been admitted by the defaulting party.  Fed. R. Civ. P. 8(b)(6); *see Geddes v. United Fin. Grp.*, 559 F.2d 557, 560 (9th Cir. 1977).  Allegations regarding damages are not taken as true and must be independently proven.  *Geddes*, 559 F.2d at 560.  In addition, "a defendant is not held to admit facts that are not well-pleaded or to admit conclusions of law."  *United States v. Cathcart*, 2010 WL 1048829, *4 (N.D. Cal. Feb. 12, 2010); *accord DirecTV, Inc. v. Hoa Huynh*, 503 F.3d 847, 854 (9th Cir. 2007) (allegations that do no more than "parrot" the elements of a claim not deemed admitted).  "[I]t follows from this that facts ... not established by the pleadings of the prevailing party, or claims ... not well-pleaded, are not binding and cannot support the judgment."  *Danning v. Lavine*, 572 F.2d 1386, 1388 (9th Cir. 1978).

Default judgments are "ordinarily disfavored" as "[c]ases should be decided upon their merits whenever reasonably possible."  *NewGen, LLC v. Safe Cig, LLC*, 840 F.3d 606, 616 (9th Cir. 2016) (quoting *Eitel*, 782 F.2d at 1472).  A district court has discretion to grant or deny a motion for default judgment.  *Aldabe v. Aldabe*, 616 F.2d 1089, 1092 (9th Cir. 1980).  The Ninth Circuit has set out seven factors to be considered by courts in reviewing a motion for default judgment: "(1) the possibility of prejudice to the plaintiff, (2) the merits of plaintiff's substantive claim (3) the sufficiency of the complaint, (4) the sum of money at stake in the action, (5) the possibility of a dispute concerning material facts, (6) whether the default was due to excusable neglect, and (7) the strong policy underlying the Federal Rules of Civil Procedure favoring decisions on the merits."  *Eitel*, 782 F.2d at 1471–72.  Entry of default judgment is not

4

1    appropriate where the second and third factors weigh against plaintiff.  *See Mnatsakanyan v.*

2    *Goldsmith & Hull APC*, 2013 WL 10155707, *10 (C.D. Cal. May 14, 2013) ("The fact that

3    factors two and three weigh against the entry of default judgment is particularly significant, as

4    courts often treat these as the most important factors.") (citing cases).

5         "If the court determines that the allegations in the complaint are sufficient to establish

6    liability, it must then determine the 'amount and character' of the relief that should be awarded."

7    *Landstar Ranger, Inc. v. Parth Enters., Inc.*, 725 F. Supp.2d 916, 920 (C.D. Cal. 2010) (quoting

8    10A Charles Alan Wright *et al.*, Fed. Prac. and Proc. § 2688, at 63 (3d ed. 1998)).  However,

9    courts may decline to enter default judgment if a party's claim lacks merit.  *See, e.g., Alan*

10   *Neuman Productions v. Albright*, 862 F.2d 1388, 1392–93 (9th Cir.1988) (reversing default

11   judgment for plaintiff on RICO claims because the complaint failed properly to allege such

12   claims), cert. denied, 493 U.S. 858 (1989); *Aldabe*, 616 F.2d at 1092-93  ("Given the lack of

13   merit in appellant's substantive claims, we cannot say that the district court abused its discretion

14   in declining to enter a default judgment in favor of appellant").

15                                             <u>ANALYSIS</u>

16        Under the first step of Rule 55's two-part analysis, the Court concludes Plaintiff has

17   satisfied the procedural requirements for default judgment.  Pursuant to Rule 55(a), the Clerk of

18   Court properly entered default against Presley, Gulan, and HMP on November 11, 2020 (Docs.

19   32, 33, 34), and against Decormier on September 24, 2021 (Doc. 46).  Plaintiff's motion for

20   default judgment complies with Rule 54(c) in that it requests a remedy that is not different from

21   that prayed for in the FAC.  (Docs. 42, 68).  Thus, the Court, in its discretion, may order a default

22   judgment against Defendants based on the *Eitel* factors.

23        The Court will consider the seven *Eitel* factors in determining whether to grant Plaintiff's

24   motion for default judgment.  The Court begins with and places particular emphasis on factors

25   two and three (*e.g.*, the merits of Plaintiff's substantive claims and the sufficiency of the

26   complaint).  *Eitel*, 782 F.2d at 1471–72; *Mnatsakanyan*, 2013 WL 10155707, *10 (C.D. Cal. May

27   14, 2013) (noting that courts often treat these two factors "as the most important" in an *Eitel*

28   analysis).

                                                    5

I.      PLAINTIFF'S RICO CAUSES OF ACTION FAIL TO STATE A CLAIM

RICO makes it "unlawful for any person employed by or associated with" an enterprise engaged in or affecting interstate commerce "to conduct or participate, directly or indirectly, in the conduct of such enterprise's affairs through a pattern of racketeering activity." 18 U.S.C. § 1962(c). To state a cause of action under RICO, a plaintiff must allege (1) conduct (2) of an enterprise (3) through a pattern (4) of racketeering activity (5) causing injury to plaintiff's business or property. *Living Designs, Inc. v. E.I. Dupont de Nemours & Co.*, 431 F.3d 353, 361 (9th Cir.2005).[2]

A.      Plaintiff Fails to Properly Plead an Enterprise

To establish liability under § 1962(c), a plaintiff must allege and prove the existence of two distinct entities: (1) a person; and (2) an enterprise that is not simply the same person referred to by a different name. *Cedric Kushner Promotions, Ltd. v. King*, 533 U.S. 158, 161 (2001); *see Moran v. Bromma*, 675 Fed. Appx. 641, 645 (9th Cir. 2017) (quoting *River City Mkts., Inc. v. Fleming Foods W., Inc.*, 960 F.2d 1458, 1461-62 (9th Cir. 1992) ("a single individual or entity cannot be both the RICO enterprise and an individual RICO defendant")).  Section 1961(4) defines an enterprise as including "any induvial, partnership, corporation, association, or other legal entity, and any union or group of individuals associated in fact although not a legal entity." 18 U.S.C. § 1961(4).  An enterprise that is not a legal entity is commonly known as an "association-in-fact" enterprise. *Ellis v. J.P. Morgan Chase & Co.*, 950 F. Supp.2d 1062, 1088 (N.D. Cal. 2013).

An association-in-fact enterprise is "any union or group of individuals…associated together for a *common purpose* of engaging in a course of conduct." *United States v. Turkette*, 452 U.S. 576, 580, 583 (1981) (emphasis added).  To show an association-in-fact enterprise, Plaintiff must allege facts establishing three elements: (1) a common purpose of engaging in a

---

[2] Because as set forth below, Plaintiff's RICO claims fail for three independent reasons, Plaintiff cannot state a claim for conspiracy to violate RICO. *E.g., Ellis v. J.P. Morgan Chase & Co.*, 950 F. Supp.2d 1062, 1090 (N.D. Cal. 2013) (citing *Howard v. America Online Inc.*, 208 F.3d 741, 751 (9th Cir. 2000)); *Chang v. Noh*, 2017 WL 7411155, *5 (C.D. Cal. Nov. 27, 2017) (same).

1    course of conduct; (2) an ongoing organization, either formal or informal; and (3) an association

2    that functions as a continuing unit.  *Odom v. Microsoft Corp.*, 486 F.3d 541, 553 (9th Cir. 2007)

3    (citing *Turkette*, 452 U.S. at 583).

4           Plaintiff alleges "on information and belief"[3] that Presley and HMP "employed" the other,

5    individually named Defendants, and that together, they constituted a "fraudulent enterprise."

6    (Doc. 42 at ¶¶ 1-2); *see id.* at ¶ 28 ("On information and belief, McHaney, Decormier, and Gulan

7    were employees and/or agents of Presley and HMP").  But an "enterprise" consisting only of a

8    corporation and its employees and board members acting on its behalf fails for lack of

9    distinctiveness because the person (the corporate entity) and the enterprise are "one and the

10   same."  *Greenstein v. Peters*, 2009 WL 722067, *2 (C.D. Cal. Mar. 16, 2009); *Living Designs,*

11   *Inc.*, 431 F.3d at 361 (noting if the enterprise consisted only of a company and its employees, the

12   pleading would fail for lack of distinctiveness).  Thus, Plaintiff has failed to allege Defendants are

13   sufficiently distinct to constitute a RICO enterprise.

14          Assuming *arguendo*, Plaintiff has sufficiently pled an enterprise that is distinct for RICO

15   purposes, Plaintiff's claim still fails as it has not plausibly alleged that the individual borrower-

16   defendants, Decormier and Gulan, shared a "common purpose" with Presley and HMP.  Nowhere

17   in the FAC does Plaintiff allege facts giving rise to a plausible inference that borrower-defendant

18   members of the enterprise, Decormier, and Gulan, were in any way involved in the actual

19   decisions relating to or conduct of the alleged fraudulent arbitrations.  Nor are the borrower-

20   defendant members of the enterprise alleged to have participated in the creation of the fraudulent

21   arbitration awards attached to Plaintiff's FAC.  *See Crichton v. Golden Rule Ins.* Co., 576 F.3d

22   392, 400 (7th Cir. 2009) ("A RICO enterprise is more than a combination of persons who commit

23   alleged predicate acts of racketeering; there must be an organization with a structure and goals

24   separate from the predicate acts themselves.") (internal quotations omitted)

25          Indeed, Plaintiff's allegations undermine any notion that the individually alleged members

26   of the enterprise share a common purpose.  For instance, Plaintiff alleges that "Defendants"

27
       ---
       [3] Under Rule 9(b), allegations based on "information and belief" are not usually
28   sufficiently particular unless they accompany a statement of facts on which the belief is founded.
     *Neubronner v. Milken*, 6 F.3d 666, 672 (9th Cir. 1993).

(defined as Presley and HMP) "have victimized defaulted borrowers by taking fees in exchange for issuing sham arbitration awards." (Doc. 42 at ¶ 1). But Decormier and Gulan are alleged in the same paragraph to have been defaulted borrowers that "solicited" Presley and HMP to obtain arbitration awards. *Id*. at ¶¶ 1(a), 1(C). Thus, passing over the FAC's wholly conclusory claims, Plaintiff's FAC inconsistently paints Decormier and Gulan as both victims and the primary instigators of the purported fraud. *See Roberts v. C.R. England, Inc.*, 318 F.R.D. 457, 487 (D. Utah 2017) (courts have "declined to include victims as part of the enterprise because victims could hardly have shared a common purpose with [an] association designed to defraud them.") (citing cases). In either case, victim or instigator, Plaintiff has provided no plausible allegation that the borrower-defendant members (Decormier and Gulan) of the enterprise knowingly cooperated with the other alleged members of the enterprise (Presley and HMP) in a joint fraud scheme.

B.    Plaintiff Fails to Properly Plead Racketeering Activity

RICO defines "racketeering activity" as any of the predicate acts listed in 18 U.S.C. § 1961(1). Those acts include mail and wire fraud, which are the predicates Plaintiff plead in its FAC. (Doc. 42 ¶¶ 39-41). To establish the predicate acts of mail and wire fraud, a plaintiff must show a scheme to defraud, involving use of the U.S. wires or mail, with the specific intent to defraud. *Schreiber Distrib. Co. v. ServWell Furniture Co.*, 806 F.2d 1393, 1399-1400 (9th Cir. 1986); *Eclectic Properties E., LLC v. Marcus & Millichap Co.*, 751 F.3d 990, 997 (9th Cir. 2014) (collecting civil RICO cases).

The "scheme to defraud" element requires "an affirmative, material misrepresentation." *United States v. Green*, 592 F.3d 1057, 1064 (9th Cir. 2010) (quoting *United States v. Benny*, 786 F.2d 1410, 1418 (9th Cir. 1986)). The misrepresentation does not need to be made through the mail or wires; rather, the use of the mail or wires only needs to be "a step in the plot." *United States v. Garlick*, 240 F.3d 789, 792 (9th Cir. 2001) (internal quotation marks omitted). The misrepresentation also does not need to be made to the RICO plaintiff, but instead may be made to a third party. *See Bridge v. Phoenix Bond & Indem. Co.*, 553 U.S. 639, 660 (2008) ("RICO's text provides no basis for imposing a first-party reliance requirement."). Further, predicate acts of

1   mail and wire fraud must be pleaded with particularity as to the time, place, content of, and

2   parties to the fraudulent communications.  *See* Fed. R. Civ. P. 9(b); *Edwards v. Marin Park, Inc.*,

3   356 F.3d 1058, 1066 (9th Cir. 2004).

4         Here, as noted in the Court's prior orders dismissing the original complaint and a moving

5   defendant from the FAC, there is not a single allegation that the defaulted borrower Defendants

6   (Decormier and Gulan) knew the scheme allegedly orchestrated by Presley and HMP was

7   fraudulent or otherwise intended to defraud.  (Doc. 41 at 5-6); (Doc. 58 at 5).  That is fatal to the

8   pleading of a mail or wire fraud count. *E.g., Schreiber Distrib. Co.*, 806 F.2d at 1399-1400.

9         Moreover, aside from vague and conclusory allegations that Defendants committed mail

10  and wire fraud (Doc. 42 ¶¶ 32-34, 39-41), there are no specific allegations identifying specific

11  wires or mailings in furtherance of the scheme within the FAC.  Thus, Plaintiff fails to plead with

12  particularity Defendants purported racketeering activity.

13        Plaintiff does attach to the FAC two purported mailings that Pressley and/or HMP may

14  have been involved with and which may have been transmitted by a Defendant in furtherance of

15  the alleged fraud scheme.  (Doc. 42).  First, Exhibit A to the FAC is a document titled

16  "Arbitration Award" in the case of Decormier and appears to be signed by Presley on a signature

17  line that lists his title as "Sole Arbitrator."  (Doc 42 at Ex. A).   The document represents that the

18  "Arbitrator" "reviewed and verified" three purported mailings, each of which are identified in the

19  document with purported USPS-receipt numbers.  *Id*.  The document also includes an image of an

20  apparent USPS-certified mailing envelope addressed to Cormier with a return address of "HMP"

21  in Bakersfield.  *Id*.  The postage date (May 15, 2019) is close in time to the date Defendant

22  Presley signed the Arbitration Award (May 13, 2019).  *Id*.

23        Second, Exhibit C to the FAC is a document titled "Final Arbitration Award" in the case

24  of Gulan and appears to be signed by Presley, identified as "Director" of "Healing My People

25  Arbitration Association" (presumably, HMP).  (Doc 42 at Ex. C).  The document represents that

26  "HMP Arbitration Association" mailed the document to Gulan.  *Id*.  Like Exhibit A, Exhibit C

27  includes an image of an apparent USPS-certified mailing envelope addressed to "Mr. Cooper"

28  with a return address of "HMP" in Bakersfield.  *Id*.  The postage date (September 12, 2019) is

1   close in time to the date Defendant Presley signed the Arbitration Award (July 22, 2019).  *Id.*

2         Notwithstanding that the Court *may* consider attachments to a complaint in determining

3   the sufficiency of the pleadings, it is not required to do so.  *E.g., United States v. Ritchie*, 342

4   F.3d 903, 908 (9th Cir. 2003).  It is not the Court's province or burden to rummage and sift

5   through voluminous attachments to a complaint to rehabilitate inadequate pleadings, particularly

6   where (as here) the pleadings are required to be made with particularity under Rule 9(b).  *See* Fed.

7   R. Civ. P. 9(b) (under Rule 9(b)'s requirement, plaintiff must plead with particularity, the time,

8   place, and manner of each act of fraud, as well as the role of each defendant in each scheme).

9   Plaintiff failed to plead the time, place, manner, and parties involved to the alleged mailings and

10  wires with particularity within its FAC.  Thus, the Court concludes that the FAC insufficiently

11  alleges racketeering activity.  *See Diallo v. Redwood Investments, LLC*, 2019 WL 3574449, *8-9

12  (S.D. Cal. Aug. 6, 2019) (denying plaintiffs' motion for default judgment on civil RICO cause of

13  action where plaintiffs adequately pleaded the time, place, manner, and parties to the first

14  predicate act of mail fraud but failed sufficiently to allege these facts as to the second predicate

15  act).[4]

16        C.    <u>Plaintiff Fails to Properly Plead a Pattern</u>

17        "A 'pattern' of racketeering activity ... requires proof that the racketeering predicates are

18  related and 'that they amount to or pose a threat of continued criminal activity.'"  *Turner v. Cook*,

19  362 F.3d 1219, 1229 (9th Cir.2004) (quoting *H.J. Inc. v. Nw. Bell Tel. Co.*, 492 U.S. 229, 239

20  (1989)).  A pattern can be shown through either open or closed-ended continuity.  *Turner*, 362

21  F.3d at 1229.  To plead open-ended continuity, a plaintiff "must charge a form of predicate

22  misconduct that 'by its nature projects into the future with a threat of repetition.'"  *Id.* (quoting

23  *Religious Tech. Ctr. v. Wollersheim*, 971 F.2d 364, 366 (9th Cir.1992)). To allege closed-ended

24  continuity, a plaintiff must aver a "series of related predicates" that extends "over a substantial

25

26        [4] Plaintiff's claim that non-party Sybil Joy Ehninger High's conduct as a notary

27  demonstrates the enterprise had undertaken racketeering activity lacks merit.  *See, e.g.*, *Gardner v. Starkist Co.*, 418 F. Supp. 3d 443, 461 (N.D. Cal. 2019) (plaintiffs "failed to plausibly allege

28  facts that show StarKist and RICO Co-Conspirators committed acts towards this alleged common purpose. Simply characterizing routine commercial dealing as a RICO enterprise is not enough.").

period of time" and threatens future criminal conduct. *Id.* (citing *Howard v. Am. Online, Inc.*, 208 F.3d 741, 750 (9th Cir.2000) (quotation marks omitted)).

As set forth above, Plaintiff *arguably* pleaded at most two predicate acts of mail fraud occurring during a discrete four-month period.  (Doc 42 at Ex. A, C).   "[T]wo instances of alleged wire fraud do not establish closed-ended continuity."  *Ice Cream Distributors of Evansville, LLC v. Dreyer's Grand Ice Cream, Inc.*, 2010 WL 2198200, *4 (N.D. Cal. May 28, 2010) (quoting *Turner*, 362 F.3d at 1231)).  Even assuming Plaintiff pleaded predicate acts with sufficient particularity, Plaintiff also fails to demonstrate closed-ended continuity because the alleged actions occurred during a relative short timeframe (between May 13, and July 31, 2019). (*See* Doc 42 at Ex. A, C). Plaintiff, therefore, fails to allege a pattern extending over a "substantial period of time."  *H.J. Inc.*, 492 U.S. at 242; *see Religious Tech. Ctr. v. Wollersheim*, 971 F.2d 364, 366–67 (9th Cir. 1992) (affirming dismissal of RICO claim for failing to establish closed-ended continuity where the alleged predicate acts took place over a period of six months); *Ice Cream Distributors of Evansville, LLC*, 2010 WL 2198200, *4 ("mail and wire fraud over a four-month period would not constitute a series of related predicates extending over a substantial period of time.") (internal quotation marks omitted)

Plaintiff fares no better in establishing open-ended continuity.  Plaintiff's conclusory allegations that Decormier and Gulan were "recruited" to be employees and/or agents of Presley and HMP to issue additional "sham arbitration awards" is not supported by facts.  (Doc. 42 ¶¶ 19, 23-29).  *See Ice Cream Distributors of Evansville, LLC*, 2010 WL 2198200, *4 (a plaintiff asserting that defendant's present fraudulent conduct evidences a purported propensity to engage in future racketeering activity "must allege facts with specificity").  And, as set forth above, Plaintiff has not pled – and it is difficult to conceive – that defaulted borrower-victims of the alleged fraud scheme would continue to participate in the venture for any amount of time following their engagement of Pressley and HMP to assist with their individual mortgages.  *See Roberts*, 318 F.R.D. at 487 (citing cases where courts declined to find that victims would share a common purpose with enterprises designed to defraud them).  Thus, there is no threat of "past conduct that by its nature projects into the future with a threat of repetition."  *Turner*, 362 F.3d at

1229.

In short, Plaintiff has failed to properly plead an enterprise and a pattern of racketeering activity under 18 U.S.C. § 1962(c).  Accordingly, Plaintiff the second and third *Eitel* factors weigh against granting default judgment.

II.      POSSIBILITY OF PREJUDICE TO PLAINTIFF

The first *Eitel* factor considers whether a plaintiff will suffer prejudice if a default judgment is not entered, and such potential prejudice to the plaintiff weighs in favor of granting a default judgment.  *PepsiCo, Inc. v. Cal. Sec. Cans*, 238 F. Supp. 2d 1172, 1177 (C.D. Cal. 2002).  In this case, Plaintiff would suffer prejudice if the Court did not enter a default judgment because it would be without recourse for recovery.  Accordingly, this factor weighs in favor of granting default judgment.

III.     THE SUM OF MONEY AT STAKE IN THE ACTION

Next, the Court considers the sum of money at stake in the action, with a lower sum weighing in favor of default judgment.  *See G & G Closed Circuit Events, LLC v. Nguyen*, 2012 WL 2339699, *2 (N.D. Cal. May 30, 2012) (noting that "default judgment is generally disfavored when the sum of money at stake is either too large or unreasonable in light of the defendant's actions").

Plaintiff seeks actual damages in the amount of $179,907.70, punitive damages in the amount of $539,723.10, treble damages in the amount of $539,723.10, consequential damages in the amount of $66,049.67, and attorneys' fees and costs in the amount of $110,831.04.  (Doc. 68 at 18-19).  In sum, Plaintiff seeks $1,436,234.61 from Defendants.  *Id*.  Generally, courts have found that this factor presents no barrier to default judgment even when millions of dollars were at stake, as long as the potential damages were proportional to the harm alleged.  *Global Commodities Trading Group, Inc., et al. v. Beneficio De Arroz Choloma, S.A., et al.*, No. 2:16-cv-1045-TLN-CKD, 2022 WL 1439499, *5 (E.D. Cal. May 6, 2022) (citations omitted) (order adopted on July 19, 2022) (unpublished).  Here, Plaintiff requests substantial damages for claims this Court has determined were not adequately pled.  Accordingly, the Court finds that this factor weighs in favor of denying default judgment.

IV.     THE POSSIBILITY OF A DISPUTE CONCERNING MATERIAL FACTS

"[A]llegations in a *well-pleaded* complaint are taken as true following the clerk's entry of default."  *Elektra Entm't Group Inc. v. Crawford*, 226 F.R.D. 388, 393 (C.D. Cal. 2005) (emphasis added).  As previously discussed, Plaintiff's FAC is conclusory, speculative, and cannot be considered "well-pleaded."  There is ample room for factual dispute.  Thus, the Court finds that this factor weighs in favor of denying default judgment.

V.      WHETHER THE DEFAULTS WERE DUE TO EXCUSABLE NEGLECT

Due process requires that interested parties be given notice of the pendency of the action and be afforded an opportunity to present their objections before a final judgment is rendered. *Mullane v. Central Hanover Bank & Trust Co.,* 339 U.S. 306, 314 (1950).  Upon review of the record before the court, there is clear indication that the default was not the result of excusable neglect.  Defendants have had ample notice of this action and have responded, albeit inadequately and nonsensically, to this action.  (Docs. 19, 28, 77).  Accordingly, this factor weighs in favor of granting default judgment.

VI.     THE STRONG POLICY FAVORING DECISIONS ON THE MERITS

"Cases should be decided upon their merits whenever reasonably possible."  *Eitel*, 782 F.2d at 1472.  Defendants' failures to adequately answer Plaintiff's complaints and/or appropriately respond to the Court's orders and Plaintiff's pleadings make a decision on the merits "impractical if not impossible."  *PepsiCo, Inc.*, 238 F. Supp. at 1177.  Accordingly, this factor weighs in favor of granting default judgment.

                        *       *       *       *       *

Upon consideration of the *Eitel* factors, the Court concludes that Plaintiff has failed to establish the merits of any alleged federal cause of action as would be required for entry of default judgment against Defendants. *See, e.g., Alan Neuman Productions*, 862 F.2d at 1392–93 (reversing default judgment for plaintiff on RICO claims because the complaint failed properly to allege such claims).  In its discretion, the Court should decline to exercise supplemental jurisdiction and address the merits of Plaintiff's state law claims.  Moreover, the remaining *Eitel* factors largely weigh in favor of denying entry of default judgment.  Accordingly, this Court will

1  recommend Plaintiff's motion for default judgment be denied.

2  VII.    PLAINTIFF'S STATE LAW CAUSES OF ACTION

3        The *Eitel* factors equally weigh against granting default judgment to Plaintiff on its state

4  law claims.  In all events, when a district court has original jurisdiction over a case it also

5  acquires supplemental jurisdiction over factually related state claims.  28 U.S.C. § 1367(a) ("the

6  district courts shall have supplemental jurisdiction over all other claims that are so related to

7  claims in the action within such original jurisdiction that they form part of the same case or

8  controversy").  When a court has dismissed all remaining federal claims, it may properly refuse

9  supplemental jurisdiction over the related state claims. 28 U.S.C. § 1367(c)(3) ("The district

10  courts may decline to exercise supplemental jurisdiction over a claim under subsection (a) if—the

11  district court has dismissed all claims over which it has original jurisdiction"); *Carnegie-Mellon*

12  *Univ. v. Cohill*, 484 U.S. 343, 350 n.7 (1988).  In fact, the Ninth Circuit notes "that state law

13  claims 'should' be dismissed if federal claims are dismissed before trial." *Acri v. Varian Assocs.*,

14  114 F.3d 999, 1000 (9th Cir. 1997) (quoting *United Mine Workers of Am. v. Gibbs*, 383 U.S. 715,

15  726 (1966)).

16        The court's decision on whether to exercise jurisdiction should be informed by values of

17  judicial economy, convenience, fairness, and comity.  *Acri*, 114 F.3d at 1002 (citing *Cohill*, 484

18  U.S. at 350).  Further, "primary responsibility for developing and applying state law rests with the

19  state courts."  *Curiel v. Barclays Capital Real Estate Inc.*, No. S-09-3074 FCD/KJM, 2010 WL

20  729499, *1 (March 2, 2010) (unpublished).  Accordingly, to the extent the Court has discretion to

21  retain supplemental jurisdiction over Plaintiff's state law claims, the undersigned recommends

22  declining to do so.

23  VIII.    LEAVE TO AMEND IS NOT WARRANTED

24        A court should freely give leave to amend when "justice so requires."

25  *AmerisourceBergen Corp. v. Dialysist West, Inc.*, 465 F.3d 946, 951 (9th Cir. 2006); *see Chodos*

26  *v. W. Publ. Co.*, 292 F.3d 992, 1003 (9th Cir. 2002) ("it is generally our policy to permit

27  amendment with 'extreme liberality'") (citing *Morongo Band of Mission Indians v. Rose*, 893

28  F.2d 1074, 1079 (9th Cir.1990)).  Granting or denying leave to amend a complaint under Rule 15

1    is in the discretion of the court.  *Swanson v. United States Forest Service*, 87 F.3d 339, 343 (9th

2    Cir. 1996).

3          In its May 2022 Order dismissing McHaney, the Court pointed out deficiencies to

4    Plaintiff's RICO claims and identified why the related state law causes of action were fatally

5    deficient.  (Doc. 58).  Nevertheless, the Court reluctantly granted Plaintiff's request for leave to

6    amend, principally because Plaintiff represented to the Court that it "has a number of additional

7    supportive facts and allegations it can add in the Complaint regarding its lack of consent and the

8    RICO allegations."  (Doc. 58 at 9).  The Court also commented that it was "at a loss to understand

9    why Nationstar has not included these allegations before now," and warned in granting leave to

10   amend that it would be Plaintiff's "last opportunity to plead the claims."  *Id*. at n. 2.  For whatever

11   strategic or tactical reason or otherwise, instead of curing the deficiencies, Plaintiff chose instead

12   to voluntarily dismiss McHaney and file the instant motion for default judgment.  (Docs. 61, 68).

13   Because Plaintiff chose not to replead, the Court can only conclude at this juncture that any

14   amendment to cure these additional deficiencies would be futile.

15   CONCLUSION AND RECOMMENDATION

16         The Court concludes that Plaintiff cannot state a federal claim and that any amendment

17   would be futile.  The Court will recommend that this action be dismissed with prejudice and to

18   decline supplemental jurisdiction of Plaintiff's state law claims.

19         Based on the foregoing, the Court HEREBY RECOMMENDS that:

20       1.  Plaintiff's motion for default judgment (Doc. 68) be DENIED;

21       2.  Plaintiff's RICO claims under §§ 1962(c), 1962(d), and 1964(c) be dismissed with

22          prejudice;

23       3.  The Court decline to exercise supplemental jurisdiction for Plaintiff's claims for a

24          violation of California's Business & Professions Code § 17200, and tortious

25          interference with contractual relations;

26       4.  Plaintiff's FAC (Doc. 42) be dismissed with prejudice; and

27       5.  The Clerk of Court be directed to close this case.

28         These findings and recommendations will be submitted to the United States District Judge

Case 1:20-cv-00620-JLT-CDB   Document 80   Filed 01/06/23   Page 16 of 16

assigned to the case, pursuant to the provisions of 28 U.S.C. § 636(b)(1).  Within 14 days after being served with these findings and recommendations, Plaintiff may file written objections with the Court.  Local Rule 304(b) (E.D. Cal. 2022).  The document should be captioned "Objections to Magistrate Judge's Findings and Recommendations."  Plaintiff is advised that failure to file objections within the specified time may result in the waiver of rights on appeal.  *Wilkerson v. Wheeler*, 772 F.3d 834, 839 (9th Cir. 2014) (citing *Baxter v. Sullivan*, 923 F.2d 1391, 1394 (9th Cir. 1991)).

IT IS SO ORDERED.

Dated:   __**January 6, 2023**__                    _____

UNITED STATES MAGISTRATE JUDGE